IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

ERNEST DISABATINO & SONS, INC.,:
EDIS COMPANY, and CRYSTAL      :
HOLDINGS, INC.,                :
                               :
          Plaintiffs,          :
                               :
     v.                        :    C.A. No. 09-406-JJF
                               :
METROPOLITAN REGIONAL COUNCIL  :
OF CARPENTERS OF PHILADELPHIA  :
AND VICINITY and EDWARD        :
CORYELL,                       :
                               :
          Defendants.          :

---

Sheldon K. Ronnie, Esquire, of FOX ROTHSCHILD LLP, Wilmington,
Delaware.

Attorney for Plaintiffs.

Thomas W. Jennings, Esquire, and Stephen J. Holroyd, Esquire, of
JENNINGS SIGMOND, P.C., Philadelphia, Pennsylvania.
Clifford B. Hearn, Jr., Esquire, of CLIFFORD B. HEARN, JR., P.A.,
Middletown, Delaware

Attorneys for Defendants.

**MEMORANDUM OPINION**

July **20** , 2010
Wilmington, Delaware

Farnan, District Judge.

Presently before the Court are a Motion For Extension Of
Time To File Answer To Complaint (D.I. 8), and a Motion To
Dismiss Complaint (D.I. 11) filed by Defendants Metropolitan
Regional Council of Carpenters of Philadelphia and Vicinity and
Edward Coryell.  For the reasons to be discussed, Defendants'
Motion For Extension Of Time will be denied as moot.  Defendants'
Motion To Dismiss will be denied.

## I.   Background

On June 3, 2009, Plaintiffs Ernest DiSabatino & Sons, Inc.
("DiSabatino"), Edis Company ("Edis"), and Crystal Holdings, Inc.
("Crystal") (collectively, "Plaintiffs") filed this action
against Defendants Metropolitan Regional Council of Carpenters of
Philadelphia and Vicinity ("Metropolitan Regional Council") and
Edward Coryell ("Mr. Coryell")(collectively, "Defendants")
seeking to vacate an arbitration award entered agaiunst
Plaintiffs.  (D.I. 1 ¶ 1.)

Crystal is a holding company which owns Edis, a construction
management company, and DiSabatino, a Delaware corporation.  (Id.
¶¶ 2,7,9.)  Prior to the events in issue, DiSabatino was
principally engaged in business in Delaware, and was party to a
collective bargaining agreement between the Delaware Contractors
Association and Carpenters Local 626 (the "DCA Agreement").  (Id.
¶ 8.)   Metropolitan Regional Council is a labor organization
with Mr. Coryell serving as its Chief Executive Officer.  (Id. ¶¶

5,6.) Metropolitan Regional Council is party to a collective bargaining agreement with, among others, the General Building Contractors Association of Philadelphia ("GBCA")(the "GBCA Agreement").  (Id. ¶ 8.)

The events giving rise to the present action began in September 2001, when Metropolitan Regional Council picketed a construction project in Delaware County, Pennsylvania for which Edis was the construction manager because Edis subcontracted carpentry work to non-union contractors.  (Id. ¶ 14.) Discussions to resolve the dispute ensued, and as part of the resolution, DiSabatino became a party to the GBCA Agreement on October 4, 2001.  (Id. ¶¶ 15, 23.)  Plaintiffs allege that in discussions conducted on September 14, 2001 and October 3, 2001, DiSabatino made clear to Metropolitan Regional Council and Mr. Coryell personally that DiSabatino would only become party to the GBCA Agreement if it would not have any impact in Delaware, where DiSabatino's bargaining rights were already assigned pursuant to the DCA Agreement.  (Id. ¶¶ 15, 18, 19, 22.)  Plaintiffs allege that DiSabatino received verbal assurances from Mr. Coryell and another representative of Metropolitan Regional Council that becoming a signatory to the GBCA Agreement would not affect DiSabatino's operations in Delaware.  (Id. ¶¶ 19, 22.) According to Plaintiffs, DiSabatino became party to the GBCA Agreement in reliance on the assurances.  (Id. ¶ 23.) Plaintiffs allege that,

2

in spite of the assurances, Metropolitan Regional Council had already begun efforts to expand the terms of the GBCA Agreement to include Delaware.  (Id. ¶¶ 20, 24.)

On December 4, 2001, the GBCA gave written notice to its members of its intent to negotiate with Metropolitan Regional Council over extension of the GBCA Agreement to Delaware.  (Id. ¶ 25.)  On January 4, 2002, DiSabatino gave written notice to GBCA of its withdrawal from any multi-employer bargaining over the extension of the GBCA Agreement to Delaware.  (Id. ¶ 26.)  On March 12, 2002, the geographic scope of the GBCA Agreement was extended to include Delaware.  (Id. ¶ 29.)  DiSabatino continued to apply the terms of the DCA Agreement, rather than the GBCA Agreement, to its job sites in Delaware.  (Id. ¶ 35.)  In response, on November 27, 2002, Metropolitan Regional Council filed a grievance against DiSabatino and demanded arbitration under the terms of the GBCA Agreement.  (Id. 38.)  Arbitrator Charles D. Long, Jr., Esquire issued an interim award on February 27, 2004,[1] and a final award on May 4, 2009.  (Id. ¶¶ 42, 48.)  Plaintiffs subsequently initiated the present action.

---

[1] DiSabatino previously filed an action in this Court seeking to have the interim arbitration award vacated, but the action was dismissed because Metropolitan Regional Council's claims for damages were still pending, and thus, the award was not final.  Ernest DiSabatino & Sons, Inc. v. Metropolitan Regional Council of Carpenters, et al., C.A. No. 04-187-SLR 2005 WL 885165 (D. Del. Feb. 28, 2005).

Counts I and II of Plaintiffs' Complaint seek an order vacating the arbitration award. Count III of Plaintiffs' Complaint alleges a state law fraud claim[2] against Metropolitan Regional Council and Mr. Coryell relating to their allegedly false representations that becoming a signatory to the GBCA Agreement would have no impact on DiSabatino's operations in Delaware. (Id. ¶¶ 70-79.)

## II.  **Parties' Contentions**

By its Motion, Defendants contend that Count III of Plaintiffs' Complaint, the fraud claim, should be dismissed as preempted by the National Labor Relations Act ("NLRA"), 29 U.S.C. § 151 et seq.  (D.I. 11, Ex. 1, at 5.)  Defendants contend that although the Complaint uses the terms "fraudulent inducement" and "equitable fraud," Plaintiffs are actually alleging that Defendants bargained in bad faith in connection with the GBCA Agreement.  (Id. at 6.)  Because the obligation to bargain in good faith with employers stems from the NLRA, Defendants argue that Plaintiffs' allegations of being "duped" into entering the GBCA Agreement fall within the National Labor Relations Board's jurisdiction.[3]  (Id.)

_____

[2] It is unclear whether this claim is brought under Pennsylvania or Delaware law, but the issue need not be decided for purposes of this Motion.

[3] Plaintiffs' Complaint alleges that the Court has supplemental jurisdiction over the state law fraud claim under 28 U.S.C. § 1367(a).  Defendants do not appear to challenge that the

4

Plaintiffs respond that the NLRA only imposes a duty to bargain in good faith when both the employer and the union have the authority to bargain. (D.I. 14, at 5.) Plaintiffs contend that the statutory duty does not apply in a situation, like this one, where the discussions between an employer and a union take place prior to the execution of a collective bargaining agreement. (Id.) Accordingly, Plaintiffs contend that a claim of fraud arising out of such discussions should not be preempted. (Id. at 5-6.)

## III. **Legal Standard**[4]

Pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure, the Court may dismiss a complaint for lack of subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). Motions brought under Rule 12(b)(1) may present either a facial challenge or a

_____

Court will have supplemental jurisdiction over this claim if it is determined that the claim is not preempted.

[4] Both parties provide only a brief discussion of the proper legal standard in their submissions to the Court. Defendants bring their Motion To Dismiss under Rule 12(b)(1) of the Federal Rules of Civil Procedure. Plaintiffs' Opposition, without explicitly stating, suggests that Defendants' Motion should be reviewed under a 12(b)(6) standard. The heart of this dispute is whether the Court has subject matter jurisdiction to hear Plaintiffs' fraud claim, or whether it is preempted by the National Labor Relations Act and within the exclusive jurisdiction of the National Labor Relations Board. In the Court's view, therefore, Defendants' Motion is properly brought under Rule 12(b)(1). See Int'l Longshoremen's Ass'n, AFL-CIO v. Davis, 476 U.S. 380, 391 (noting the "jurisdictional nature" of Garmon preemption); Smith v. Houston Oilers, Inc., 87 F.3d 717, 721 (5th Cir. 1996)("NLRA preemption is an issue of subject matter jurisdiction".)

factual challenge to the Court's subject matter jurisdiction.
Gould Elecs. Inc. v. U.S., 220 F.3d 169, 176 (3d Cir.
2000)(citing Mortensen v. First Fed. Sav. and Loan Ass'n, 549
F.2d 884, 891 (3d Cir. 1977)).  If the motion presents a factual
attack, the Court may consider evidence outside the pleadings,
id., including affidavits, depositions, and testimony, to resolve
factual issues bearing on jurisdiction.  Gotha v. U.S., 115 F.3d
176, 179 (3d Cir. 1997).  Moreover, in reviewing a factual
challenge to the court's subject matter jurisdiction, the
presumption of truthfulness does not attach to the allegations of
the complaint.  Mortensen, 549 F.2d at 891.  If the motion
presents a facial attack, the Court may only consider the
allegations of the complaint, and documents referenced therein,
in the light most favorable to the plaintiff.  Gould Elecs., 220
F.3d at 176.

## IV.  Discussion

"The National Labor Relations Act is a comprehensive code
passed by Congress to regulate labor relations in activities
affecting interstate and foreign commerce."  Nash v. Florida
Indus. Comm'n, 389 U.S. 235, 238 (1967).  The Garmon preemption
doctrine originates from the Supreme Court's decision in San
Diego Bldg. Trades Council v. Garmon, 359 U.S. 236 (1959), and
protects the National Labor Relations Board's exclusive
jurisdiction over unfair labor proceedings.  Voilas v. Gen.

Motors Corp., 170 F.3d 367, 378 (3d Cir. 1999).  Accordingly,

"[w]hen an activity is arguably subject to §7 or §8 of the

[NLRA], the States as well as federal courts must defer to the

exclusive competence of the National Labor Relations Board."

Garmon, 359 U.S. at 245.  However, preemption should not be

presumed when the activity to be regulated "is of only peripheral

concern to the federal law or touches interests deeply rooted in

local feeling and responsibility."  Belknap, Inc. v. Hale, 463

U.S. 491, 498 (1983)(citing Garmon, 359 U.S. at 243-44).  Under

Section 8 of NLRA, it an unfair labor practice for a labor

organization "to refuse to bargain collectively with an employer,

provided it is the representative of his employees subject to the

provisions of section 159(a)."  29 U.S.C. §§ 158(b)(3).  Further,

such bargaining must be done "in good faith."  Id. § 158(d).

    At this time, the Court cannot conclude that Defendants'

alleged misrepresentations to DiSabatino during negotiations were

arguably unfair labor practices under 29 U.S.C. § 158(b)(3) which

would subject Plaintiffs' state law fraud claim to Garmon

preemption.  Although not discussed in Defendants' Motion, the

Court understands Defendants to be raising a factual challenge to

subject matter jurisdiction because Defendants are not merely

challenging the adequacy of the pleading in alleging subject

matter jurisdiction.  See Mortensen, 549 F.2d at 891 (noting that

a factual challenge under Rule 12(b)(1) "attack[s] the existence

of subject matter jurisdiction in fact, quite apart from any
pleadings"). By their Complaint, Plaintiffs allege that
Defendants made knowingly false representations to DiSabatino
with the intent of inducing DiSabatino to become a signatory to
the GBCA Agreement, that DiSabatino detrimentally relied on those
representations by becoming a signatory, and that DiSabatino was
injured as a result. (D.I. 1 ¶¶ 71-80.) However, neither the
facts as averred in the Complaint, nor any other evidence outside
the pleadings, demonstrates that DiSabatino and Defendants were
in a bargaining relationship at the time of the alleged
misrepresentations.

In order for the NLRA's statutory duty to bargain in good
faith to attach, both the employer and the union must have the
authority to bargain. Joseph W. Davis, Inc. v. Int'l Union of
Operating Eng'rs, Local 542, 636 F. Supp. 2d 403, 413 (E.D. Pa.
2008)(citing Limbach Co. v. Sheet Metal Workers Int'l Assn., 949
F.2d 1241, 1248 (3d Cir. 1991)); see also 29 U.S.C §
158(b)(3)(stating that a union must collectively bargain with an
employer provided that union is the representative of his
employees subject to Section 159(a)). Generally, a union can
only represent the employees of a bargaining unit for purposes of
collective bargaining if selected by a majority of the employees
in that bargaining unit. 29 U.S.C. § 159(a); see also Limbach,
949 F.2d at 1248; Davis, 636 F. Supp. 2d at 413. Defendants have

8

not pointed to any evidence currently before the Court which demonstrates that Metropolitan Regional Council was selected by a majority of the employees of DiSabatino as their representative for purposes of collective bargaining.

An exception to the majority requirement is found in Section 8(f), which permits employers and unions in the construction industry to enter into collective bargaining agreements (i.e., "pre-hire agreements") without regard to the union's majority status.  29 U.S.C. § 158(f); see also Limbach, 949 F.2d at 1248. A pre-hire agreement is a contract made between an employer and a union before the workers to be covered by the contract have been hired, thus allowing the employer and union to designate the union as the exclusive representative of the company's employees without meeting the majority requirement.  Limbach, 949 F.2d at 1248-49.  Interestingly, Defendants, who argue for preemption, make no mention of Section 8(f), but Plaintiffs, who oppose preemption, state that "[t]here is no dispute but that [a pre-hire agreement] is exactly what was being discussed between DiSabatino and [Metropolitan Regional Council], and then what actually happened, in this case."  (D.I. 14, at 5.)  While it is clear that DiSabatino assigned its collective bargaining rights to GBCA when it became a signatory to the GBCA Agreement (D.I. 1, Ex. B), neither party has supplied the Court with a copy of the GBCA Agreement.  In light of the uncertainties about the content

of the GBCA Agreement, and Defendants' failure to address the issue, the Court declines to make any determination at this time on the applicability of Section 8(f) to this action.

In sum, there is currently no basis for the Court to find that DiSabatino and Defendants were in a bargaining relationship and that Defendants' alleged misrepresentations were arguably unfair labor practices under 29 U.S.C. § 158(b)(3). The Court notes that both parties provided, at best, a cursory analysis of the law concerning Garmon preemption. Pursuant to Rule 12(h)(3), challenges to subject matter jurisdiction may be raised at any time during the course of a case. Accordingly, the issue may be revisited at a later point when the parties are able to engage in a more detailed legal and factual examination.

## V.    Conclusion

For the reasons discussed, Defendants' Motion For Extension Of Time To File Answer To Complaint will be denied as moot. Defendants' Motion To Dismiss Complaint will be denied.

An appropriate Order will be entered.